UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CROP PRODUCTION SERVICES, INC., Plaintiff, v. NARUM CONCRETE CONSTRUCTION, INC., Defendant. | NO: 12-CV-5126-TOR<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) and Defendant's Motion for Summary Judgment (ECF No. 35). These matters were heard with oral argument on September 3, 2013, in Yakima, Washington. Brent S. Bastian appeared on behalf of the Plaintiff. Kimberly A. Reppart appeared on behalf of Defendant. The Court has reviewed the completed briefing and the record and files herein, and is fully informed.

///

BACKGROUND

This is an action to recover attorney's fees and costs incurred by Plaintiff during its successful defense of a personal injury lawsuit filed by John Hymas, one of Defendant's former employees, arising from a 2007 construction accident that occurred on Plaintiff's property. Plaintiff seeks to recover its fees and costs pursuant to an indemnification clause in the parties' contract. The parties have filed cross-motions for summary judgment on the issue of whether the clause contains a "clear and specific" waiver of Defendant's immunity from liability under the Washington Industrial Insurance Act. Anticipating a ruling in its favor on that issue, Plaintiff has also moved for partial summary judgment on the issue of Defendant's liability for reimbursement of its attorney's fees and costs. For the reasons discussed below, the Court finds that the indemnification clause contains a "clear and specific" waiver of Defendant's statutory immunity and is therefore enforceable. Because there are no genuine issues of material fact concerning Defendant's obligation to indemnify, Plaintiff is entitled to summary judgment.

FACTS

Plaintiff Crop Production Services, Inc. (formerly known as UAP Distribution, Inc.) ("UAP") is a chemical and fertilizer manufacturer. In 2006, UAP began building a fertilizer mixing plant on land it owned in Plymouth, Washington. UAP contracted with Defendant Narum Concrete Construction, Inc.

("Narum") to perform excavation and concrete work on the jobsite. The parties executed a written contract on September 15, 2006. Among other things, this contract called for Narum to indemnify UAP against "claims, damages, losses and expenses, including but not limited to attorneys' fees . . . arising out of or resulting from performance of the Work." ECF No. 34-2 at 8.

On February 9, 2007, one of Narum's employees, John Hymas ("Hymas"), fell into a trench while helping to pour concrete. Hymas, who is not a party to these proceedings, was seriously injured. At the time of the accident, the trench was not protected with guardrails or any other type of safety barrier. Hymas subsequently sued UAP in Benton County Superior Court for negligently failing to protect him against a dangerous condition.

Shortly after being served with the Hymas lawsuit, UAP advised Narum that it was contemplating a tender of its defense pursuant to the indemnification provision in the parties' contract:

> This firm is still investigating the facts of this case and the legal defenses available to our clients. One of these potential defenses might be that, under the terms of the contract . . . Narum was responsible for all safety on the project and had agreed to indemnify UAP for any claims or losses related to the project. We have not yet completed our evaluation of the case, but wanted to inform you of its existence and the possibility that my clients will tender their defense to you under the indemnification portion of the contract found in Section 8.13.

ECF No. 34-3 at NAR000003.

Narum responded two weeks later, indicating that it had no obligation to indemnify because (1) Narum was not liable for Hymas's injuries; and (2) even if it were found to be liable, the indemnification provision in the parties' contract was not enforceable under Washington law. Specifically, Narum explained:

> The complaint by Mr. Hymas is based upon the negligence of UAP. There is no allegation in the complaint that Narum was in any way negligent. More important, based on our understanding of the facts, Narum was not negligent with respect to the events giving rise to the subject accident (and lawsuit). Even if Narum was in some way negligent (which we deny), Mr. Hymas is barred from making a claim against Narum by application of the Industrial Insurance Act, RCW 51.04.010. Narum has immunity from any such claim by Mr. Hymas, and immunity from any action filed by a third party (e.g., UAP).
>
> The contract between UAP and Narum provides for indemnification [at] § 8.13. However, as stated therein, the obligation of Narum to indemnify UAP applies "only to the extent caused by the negligent acts or omissions of the contractor." Narum was not negligent. Narum has no contractual obligation to indemnify UAP for [the] negligent acts or omissions of UAP. Therefore, there are no facts to support the indemnification claim made by UAP against Narum.
>
> Even if it were found that Narum was negligent, we do not believe that the contract between UAP and Narum satisfies common law requirements regarding indemnification agreements that seek to avoid the application of the Industrial Insurance Act. First, such indemnification agreements are disfavored. Second, any intent to require indemnification, and avoid application of the Industrial Insurance Act, must be clearly expressed in the agreement. *Brown v. Prime Construction Co.*, 102 Wn.2d 235, 239, 684 P.2d 73 (1984). While the contract between UAP and Narum, at § 8.13.2, references the workers' compensation act, we do not believe that the language clearly and specifically contains a waiver of the immunity of the act.
>
> We do not believe that Narum was in any way responsible (i.e., negligent) for the subject accident. Even if such were found, the

> Industrial Insurance Act immunizes Narum from such liability. As for the indemnification claim being made by UAP, it is also barred by the Industrial Insurance Act, which bar has not been clearly and specifically waived in the contract. For these reasons, we do not believe that Narum has a duty to defend UAP from claims based upon UAP's negligence.

ECF No. 34-4 at NAR000008.

UAP defended itself in state court and eventually won dismissal of Hymas's claims. Hymas appealed to the Washington Court of Appeals, which affirmed the dismissal in a published opinion. *Hymas v. UAP Distribution, Inc.*, 167 Wash. App. 136 (2012). In reaching this result, the Court of Appeals held that Narum (rather than UAP) exercised control of the worksite and was therefore responsible for ensuring workplace safety. *Id.* at 154-59. The court further implied—but did not hold—that Narum was negligent in failing to erect a guardrail or some other type of safety barrier around the open trench:

> UAP turned the raw land over to Narum. Narum dug and framed the trench. Mr. Hymas and Narum were well aware of the obvious dangerous condition, a five-foot-deep trench approaching the [size] of a football field. Given Narum's unchallenged competence and 43 years of performing concrete construction work, Mr. Hymas's 12 years of experience working as a concrete pump operator, Narum's express agreement to comply with safety laws and regulations, and Narum's and Mr. Hymas's awareness of the hazard, no reasonable trier of fact could find that UAP should have anticipated that Narum would allow Mr. Hymas to perform work, and especially distracting work, adjacent to the trench, without protecting him in some fashion from a fall.

*Id.* at 163-64. Hymas later filed a petition for discretionary review in the Washington Supreme Court. The petition was ultimately denied.

At the conclusion of the above proceedings, UAP demanded reimbursement of its defense costs from Narum pursuant to the indemnification provision in the parties' contract. In a nine-page letter dated August 29, 2012, Narum rejected the demand on the ground that it had not "clearly and specifically" waived its statutory immunity from liability for such costs:

> The indemnity provision in the contract [which] UAP drafted contains **no waiver** of [RCW] Title 51 immunity, much less a "clear and specific waiver[.] . . . An express, written Title 51 waiver is a necessary condition precedent for UAP's claim to be cognizable under RCW 4.24.115 and under *Brown v. Prime Construction*. As Narum did not expressly waive its immunity under Title 51, UAP's claims against it for costs and attorney's fees spent in defense of the lawsuit brought by Hymas are unenforceable.

ECF No. 37, Ex. 5, at 3-4 (emphasis in original) (internal citation omitted). UAP subsequently filed the instant action for indemnification and breach of contract on September 25, 2012. ECF No. 1.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then

shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may only consider evidence that would be admissible at trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. The Indemnification Provision Contains a "Clear and Specific" Waiver of Narum's Immunity Under the Industrial Insurance Act**

The Washington Industrial Insurance Act, RCW 51.04.010, *et seq.*, grants employers immunity from liability for workplace injuries sustained by their own employees. RCW 51.04.010. For public policy reasons, employers are generally barred from waiving this immunity. RCW 51.04.060; RCW 4.24.115(1)(a). A limited exception to this rule allows employers to indemnify third parties who

become liable to their employees by virtue of the employer's negligence. *Brown v. Prime Constr. Co., Inc.*, 102 Wash.2d 235, 238 (1984); RCW 4.24.115(1)(b). Because such agreements "run[] contrary to the foundation of the industrial insurance scheme," however, they are subject to heightened enforceability requirements. *Id.* at 239. To be enforceable under Washington law, this type of third-party indemnification agreement will only be enforced if it "clearly and specifically" waives the employer's immunity. *Id.* A "clear and specific" wavier may be found from (1) express language to the effect that the employer has waived the immunity granted to it under the workers compensation act, RCW Title 51; or (2) a provision "specifically stating that the [employer] assumes potential liability for actions brought by its own employees." *Id.* at 240. By statute, such an agreement must also have been "mutually negotiated by the parties" to be enforceable. RCW 4.24.115(1)(b).

The primary issue here is whether the indemnification provision in the parties' contract contains a "clear and specific" waiver of Narum's immunity under the Industrial Insurance Act. The provision at issue reads:

> **§ 8.13 INDEMNIFICATION**
> **§ 8.13.1** To the fullest extent permitted by law, the Contractor [Defendant] shall indemnify and hold harmless the Owner [Plaintiff], Architect, Architect's consultants and agents and the affiliated companies, officers, and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, fees related thereto or to the enforcement of this paragraph, arising out of or resulting from performance of the Work,

> provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use therefrom, but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 8.13.
>
> **§ 8.13.2** In claims against any person or entity indemnified under this Section 8.13 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 8.13.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

ECF No. 34-2 at 8.

The Court finds that the language above satisfies the "clear and specific" waiver requirement. As noted above, an indemnification agreement can satisfy the "clear and specific" waiver requirement in one of two ways: (1) by expressly stating that the employer has waived its immunity under the workers compensation act; or (2) "by specifically stating that the [employer] assumes potential liability for actions brought by its own employees." *Brown*, 102 Wash.2d at 239-40. While the indemnification provision above does not specifically reference "RCW Title 51," it does state that Narum's obligation to indemnify will not be limited by any applicable "workers' compensation acts, disability benefit acts or other

employee benefit acts." ECF No. 34-2 at 8. The Court finds that this express reference to Washington's workers compensation act satisfies the first test set forth in *Brown*.

The indemnification provision also expressly states that Narum will assume liability for claims brought by its own employees. Section 8.13 provides that Narum must indemnify UAP for claims "arising out of or resulting from [its] performance of the Work." ECF No. 34-2 at 8 (Section 8.13.1). This includes "claims against any [indemnified person] *by an employee of the Contractor [Narum]*." ECF No. 34-2 at 8 (Section 8.13.12) (emphasis added). Hence, Section 8.13 also "clearly and specifically" waives Narum's immunity under the second *Brown* test.

Contrary to Narum's assertions, *Brown* does not dictate a different result. As UAP correctly notes, *Brown* found a valid waiver from contract language which is identical in all material respects to the language in Section 8.13 above.[1] *Brown*, 102 Wash.2d at 241. Because the subcontractor against whom the waiver was asserted was not a party to the contract which contained that language, however (*i.e.*, the "main" contract between the contractor and the landowner), the *Brown*

[1] Defendant agrees that the language at issue in *Brown* is "nearly word-for-word identical to § 8.13.1 and § 8.13.2." ECF No. 35 at 17.

Court was forced to decide whether to enforce the waiver against the subcontractor via an incorporation clause which purported to incorporate the terms of the "main" contract into the subcontract. *Id.* The Court declined to do so for three reasons:

> First, [enforcing the waiver against the subcontractor via the incorporation clause] would create a conflict between the subcontract and main contract because [the subcontractor] would have to indemnify under one [indemnification] provision and not the other. By the terms of the subcontract . . . in cases of conflict the subcontract controls and, therefore, [the subcontractor] would not be bound to indemnify [the contractor]. Second, the indemnification and incorporation provisions of the subcontract create a manifest ambiguity and such confusion must be construed against the drafter, [the contractor]. Finally, even if not manifestly ambiguous, both subcontract provisions, read together, fail to clearly express an intent on the part of [the subcontractor] to waive its immunity under the workers' compensation provisions of RCW Title 51.

*Brown*, 102 Wash.2d at 241.

The reasoning excerpted above is wholly irrelevant to the instant case. Unlike the subcontractor in *Brown*, Narum *is* a party to the contract with effective waiver language. UAP is not attempting to foist that language upon Narum via an incorporation clause. Thus, the Court is not presented with the difficult question at issue in *Brown*: whether a "clear and specific" waiver can be found from language to which an employer *did not expressly agree*. The only relevant question here is whether language to which Narum *did* expressly agree amounts to a "clear and specific" waiver. For the reasons stated above, the Court concludes that it does.

Finally, the Court finds that the waiver language in Section 8.13 was "mutually negotiated by the parties" within the meaning of RCW 4.24.115(1)(b). Narum asserts that Section 8.13 does not satisfy this requirement because (1) "[t]he provision itself contains no reference to 'mutual negotiation,'" and (2) Narum's owner, Wayne Narum, "had no understanding that the [indemnification] provision constituted some sort of waiver of Narum's Title 51 immunity" when he signed the contract. ECF No. 47 at 6, 7. Neither argument is persuasive. While the indemnification provision does not specifically recite that it was "mutually negotiated," there is no such requirement under Washington law. In any event, the record reveals that the indemnification provision was, in fact, the product of mutual negotiation. Notably, the entire form contract—including Section 8.13—is riddled with modifications and interlineations. UAP asserts that many of these changes were made by Narum, *see* ECF No. 38 at 11 n. 1. Narum has not denied this assertion. The fact that changes were made to the standard form contract is strong evidence that the contract was negotiated. At a minimum, Narum had an *opportunity* to negotiate the contract, which is sufficient to satisfy a requirement of mutual negotiation under Washington law. *See Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wash. App. 229, 249 (2009) (holding that "the opportunity to negotiate the documents and make changes to material terms" is sufficient to support a finding of mutual negotiation).

Moreover, Mr. Narum's professed ignorance of the waiver is insufficient to preclude a finding of mutual assent. Mr. Narum specifically admitted that he did not read the contract before signing it. Narum Dep., ECF No. 45-1, at Tr. 71:15, 83:8. As a result, Narum cannot be heard to complain that it was ignorant of the indemnification provision. *See Yakima Cnty. (West Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wash.2d 371, 389 (1993) ("Where a party has signed a contract without reading it, that party cannot successfully argue that mutual assent was lacking as long as the party was not deprived of the opportunity to read the contract, the contract was 'plain and unambiguous,' the party was capable of understanding the contract, and no fraud, deceit, or coercion occurred."); *Nat'l Bank of Washington v. Equity Investors*, 81 Wash.2d 886, 912 (1973) ("It is a general rule that a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents."). Given that there is no evidence of fraud, deceit or coercion, the Court concludes that indemnification provision is enforceable.

**B. Narum is Liable For UAP's Attorney's Fees and Costs**

UAP has also moved for summary judgment on the issue of whether Narum is liable for its attorney's fees and costs pursuant to the indemnification provision in the parties' contract. ECF No. 32 at 3-13; ECF No. 44 at 1, 7-10. Under the plain language of the indemnification provision, resolution of this issue hinges on

whether Hymas's injuries were caused (at least in part) by Narum's negligence. *See* ECF No. 34-2 at 8 ("[Narum] shall indemnify and hold harmless [UAP] . . . from and against claims, damages, losses and expenses, including but not limited to attorneys' fees [and] fees related thereto . . . arising out of or resulting from performance of the Work . . . to the extent caused by the negligent acts or omissions of [Narum]"). In the instant motion, UAP asserts that Narum has already been adjudged negligent by the Washington Court of Appeals and is bound by that result under the common law doctrine of "vouching in." In the alternative, UAP contends that Narum has failed to demonstrate a genuine issue of material fact as to its liability for Hymas's injuries in the instant proceedings.

Addressing the latter argument first, the Court finds that there are no disputed issues of material fact concerning Narum's negligence. As a threshold matter, the Court notes that Narum made no attempt whatsoever to establish a genuine issue for trial in its summary judgment briefing. UAP squarely raised the absence of material facts in its motion, *see* ECF No. 32 at 10-13, and Narum simply failed to respond. Thus, Narum has effectively conceded the issue. *See S. Nevada Shell Dealers Ass'n v. Shell Oil Co.*, 725 F. Supp. 1104, 1109 (D. Nev. 1989) (party opposing summary judgment implicitly conceded an issue by failing to respond to moving party's argument).

Moreover, even if Narum had not conceded the issue, the record supports UAP's assertion that there are no issues for trial concerning Narum's negligence. As the contractor responsible for the project, Narum had a specific duty to comply with regulations enacted by the Washington Department of Labor and Industries pertaining to worker safety. *Adkins v. Aluminum Co. of Am.*, 110 Wash.2d 128, 153 (1998). One such regulation in effect at the time required guardrails to be erected around surfaces more than four feet above an adjacent grade:

> Every open sided floor, platform or surface four feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent . . . on all open sides, except where there is [an] entrance to a ramp, stairway, or fixed ladder.

WAC 296-155-505(6)(a).[2] It is undisputed that the trench into which Hymas fell was five (5) feet deep and was not protected by a guardrail. Pl.'s Statement of Undisputed Facts, ECF No. 33, at ¶¶ 11-13. It is further undisputed that Hymas would have been restrained from falling into the trench had a guardrail been present. *Id.* at ¶ 14. In view of these undisputed facts, there is no genuine issue for trial as to Narum's negligence.

---

[2] Text as reproduced in *Hymas*, 167 Wash. App. at 151, n. 5. This regulation was repealed as part of a reorganization of the WISHA regulations on February 20, 2013. *See legislative history available at* 2013 WA REG TEXT 303769. A substantially similar provision can now be found at WAC 296-155-24609(2).

At oral argument, Narum's counsel intimated that there remains a genuine issue for trial because non-parties to this lawsuit, including Hymas and certain unnamed "inspectors," may have been contributorily negligent. This argument is unavailing because contributory negligence is not relevant to the issue of liability (*i.e.*, whether Narum's duty to indemnify has been triggered). There is no genuine dispute that Narum was at least *partially* at fault for Hymas's accident. Pursuant to Section 8.13.1, Narum must indemnify UAP for *any* liability which arises from Narum's own negligence. *See* ECF No. 34-2 at 8 (Narum shall indemnify UAP against liability "only to the extent caused by the negligent acts or omissions of [Narum], a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable"). Thus, Narum's duty to indemnify is triggered, and UAP is entitled to summary judgment on the issue of liability. The *extent* of Narum's liability—*i.e.*, the amount of fees and costs for which Narum is responsible—is properly decided as an issue of damages. Given that UAP did not move for summary judgment on the issue of damages, the Court need not decide whether there are disputed issues of fact concerning contributory negligence. *See* ECF No. 32 at 2 n. 1 ("Plaintiff . . . is moving [for summary judgment] as to liability only, leaving the issue of damages for another day.").

Moreover, to whatever extent Hymas may have been contributorily negligent, any such negligence would appear to fall within the scope of Narum's

indemnification obligation. As noted above, the obligation extends to liability arising from negligence on the part of "anyone directly or indirectly employed" by Narum. ECF No. 34-2 at 8. Because Hymas was employed by Narum at the time of the accident, any negligence attributable to Hymas would not absolve Narum of its duty to indemnify. If proof of contributory negligence were sufficient to preclude indemnification, the language in Section 8.13.1 requiring Narum to indemnify UAP "only to the extent caused by [its own] negligent acts" would be rendered meaningless. For this additional reason, UAP is entitled to summary judgment on the issue of liability.

Given that Narum has failed to demonstrate a genuine issue of fact for trial on the issue of liability, the Court need not address UAP's argument concerning the binding effect of the *Hymas* decision under the "vouching in" doctrine.

//

//

//

//

//

//

//

//

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is **GRANTED**.
2. Defendant's Motion for Summary Judgment (ECF No. 35) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** September 4, 2013.



THOMAS O. RICE
United States District Judge