1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  CROP PRODUCTION SERVICES,
   INC., formerly known as UAP              NO:  12-CV-5126-TOR
8  DISTRIBUTION, INC.;
                                            ORDER ON SECOND CROSS-
9                  Plaintiff,               MOTIONS FOR SUMMARY
                                            JUDGMENT
10        v.

11 NARUM CONCRETE
   CONSTRUCTION, INC.;
12
                   Defendant.
13

14        BEFORE THE COURT is Plaintiff's Motion for Summary Judgment re:

15 Damages (ECF No. 61) and Defendant's Motion for Partial Summary Judgment re:

16 Premises Liability (ECF No. 69).  Also before the Court are the parties' cross-

17 motions to exclude the anticipated testimony of their respective expert witnesses

18 concerning the reasonableness of the attorney's fees incurred by Plaintiff in the

19 underlying litigation (ECF Nos. 65 and 72).  These matters were heard with oral

20 argument on June 18, 2014.  Plaintiff was represented by Brent S. Bastian and

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

Benjamin A. Schwartzman.  Defendant was represented by Kimberly A. Reppart. The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

This is an action to recover litigation costs pursuant to an indemnification agreement.  The Court previously ruled that (1) the indemnification agreement "clearly and specifically" waived Defendant's immunity from liability under the Washington Industrial Insurance Act, RCW 51.04.010, *et seq.*; and (2) Plaintiff is entitled to judgment as a matter of law on the issue of liability because there are no disputed issues of fact concerning Defendant's obligation to indemnify.

Plaintiff now moves for summary judgment on the issue of damages, claiming $397,549 in attorney's fees and $44,793 in costs incurred in the underlying litigation.  Defendant has filed a cross-motion for partial summary judgment which seeks to prohibit Plaintiff from recovering fees and costs relating to one of the two claims litigated in the underlying personal injury case.  Both parties have also moved to exclude the testimony of their respective experts concerning the reasonableness of Plaintiff's claimed damages award.

///

///

///

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 2

FACTS[1]

Plaintiff Crop Production Services, Inc., (formerly UAP Distribution, Inc.) ("UAP") hired Defendant Narum Concrete Construction, Inc., ("Narum") to perform excavation and concrete work on a construction site owned by UAP. The parties entered into a written agreement which required Narum to indemnify UAP against any claim, including associated litigation costs, "arising out of or resulting from performance of the Work . . . but only to the extent caused by the negligent acts or omissions of [Narum] . . . anyone directly or indirectly employed by [Narum] or anyone for whose acts [Narum] may be liable." The agreement also required Narum to indemnify UAP against claims asserted by Narum's employees, regardless of any "limitation on amount or type of damages, compensation or benefits payable by [Narum] . . . under workers' compensation [laws]."

In February 2007, one of Narum's employees, John Hymas ("Hymas"), was seriously injured when he fell into an open trench while helping to pour concrete. The trench was not protected by a guardrail or any other type of safety barrier. Hymas applied for and received worker's compensation benefits. He later sued

---

[1] Many of the facts relevant to these motions are set forth in detail in the Court's September 4, 2013 Order granting Plaintiff's motion for partial summary judgment. *See* ECF No. 51. Those facts are incorporated herein by reference.

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 3

UAP in Benton County Superior Court, asserting claims for premises liability and failure to comply with Washington Industrial Safety and Health Act ("WISHA") regulations. Narum was not named as a party in this lawsuit, presumably because it was immune from suit under the Washington Industrial Insurance Act, RCW 51.04.010, *et seq.*

Shortly after being served with the lawsuit, UAP advised Narum that it was contemplating a tender of its defense pursuant to the parties' indemnification agreement. Narum refused to accept any such tender on two grounds. First, it asserted that it had no duty to indemnify because the claims arose exclusively from UAP's own conduct and there had been "no allegation . . . that Narum was in any way negligent." Second, Narum argued in the alternative that, even assuming that it could be found partially liable, the indemnification agreement was unenforceable because it did not contain a "clear and specific" waiver of Narum's immunity under the Industrial Insurance Act.

UAP managed its own defense and eventually won summary judgment on both claims. Hymas appealed to the Washington Court of Appeals, which affirmed in a published opinion. *Hymas v. UAP Distrib., Inc.*, 167 Wash. App. 136 (2012). As relevant here, the Court of Appeals held that UAP owed no duty as a landowner to protect Hymas from the dangerous condition created by Narum:

> UAP turned raw land over to Narum. Narum dug and framed the trench. Mr. Hymas and Narum were well aware of the obvious

> dangerous condition, a five-foot-deep trench approaching the area of a football field. Given Narum's unchallenged competence and 43 years of performing concrete construction work, Mr. Hymas's 12 years of experience working as a concrete pump operator, Narum's express agreement to comply with safety laws and regulations, and Narum's and Mr. Hymas's awareness of the hazard, no reasonable trier of fact could find that UAP should have anticipated that Narum would allow Mr. Hymas to perform work, and especially distracting work, adjacent to the trench, without protecting him in some fashion from a fall.

*Id.* at 163-64.

UAP subsequently demanded reimbursement of its defense costs from Narum pursuant to the indemnification agreement. Narum refused, once again arguing that the agreement was unenforceable because it did not contain a "clear and express" waiver of its immunity under the Industrial Insurance Act. UAP then filed this lawsuit to recoup its defense costs and to recover attorney's fees incurred in enforcing the indemnification agreement.

PROCEDURAL HISTORY

The parties previously filed cross-motions for summary judgment on the issues of whether the indemnification provision was enforceable and, if so, whether Narum's indemnification obligation had been triggered. The Court ruled in UAP's favor, concluding that Narum had "clearly and specifically" waived its immunity under the Industrial Insurance Act, and that Narum's duty to indemnify had been triggered because the record conclusively established that Narum was negligent in failing to erect a guardrail that would have prevented the accident. ECF No. 51.

Because UAP had not sought summary judgment on the issue of damages, and in light of Narum's belated suggestion that Hymas and other non-parties may have been contributorily negligent, the Court did not address how much of its defense costs UAP was entitled to recover.

The parties now move for summary judgment on the issue of damages. UAP seeks reimbursement of $397,549 in attorney's fees and $44,793 in costs incurred in the underlying litigation. The parties have also filed cross-motions to exclude the anticipated testimony of their respective experts concerning the reasonableness of these figures. Finally, Narum has filed a motion for partial summary judgment seeking to prohibit UAP from recovering attorney's fees and costs relating to Hymas's premises liability claim.

## DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the

1    plaintiff's position will be insufficient; there must be evidence on which the jury

2    could reasonably find for the plaintiff." *Id.* at 252.

3        For purposes of summary judgment, a fact is "material" if it might affect the

4    outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any

5    such fact is "genuine" only where the evidence is such that a reasonable jury could

6    find in favor of the non-moving party. *Id.* In ruling upon a summary judgment

7    motion, a court must construe the facts, as well as all rational inferences therefrom,

8    in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372,

9    378 (2007). The court may only consider evidence that would be admissible at

10   trial. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

11   **A. Narum is Liable for Defense Costs Relating to Hymas's Premises**

12       **Liability Claim**

13       Narum argues that is not responsible for fees and costs generated in defense

14   of Hymas's premises liability claim because it "did not agree to indemnify UAP

15   for claims arising out of UAP's sole negligence." ECF No. 80 at 1. In support of

16   this argument, Narum notes that it agreed to indemnify UAP "only to the extent" of

17   its own negligence. Because the premises liability claim arose exclusively from

18   *UAP's* alleged negligence, Narum argues, defense costs relating to this claim are

19   beyond the scope of the parties' indemnification agreement.

20       The Court is not persuaded. Although the premises liability claim purported

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 7

to arise exclusively from UAP's negligence (*i.e.*, independent of any negligence on the part of Narum), the crux of the claim was that UAP had a duty as a landowner to protect Hymas from the dangerous condition created by Narum.  ECF No. 64 at ¶ 19; ECF No. 62-3, Ex. D.  Somewhat simplified, Hymas's theory of liability was that UAP should have recognized that Narum was maintaining an unsafe work environment on its land and done something to correct the problem.  Thus, the premises liability claim was essentially a bid to hold UAP liable for Narum's negligence.

Narum's efforts to avoid paying fees and costs generated in defense of this claim are unavailing.  As Narum itself recognizes, an indemnification agreement must be applied in a manner consistent with the parties' intent.  *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wash.2d 573, 580 (1993).  Such intent "must be inferred from the contract as a whole; the meaning afforded the provision and the whole contract must be reasonable and *consistent with the purpose of the overall undertaking*."  *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wash. App. 86, 100 (2012) (emphasis added) (quotation omitted).  The relevant indemnification language in the parties' contract reads:

> **§ 8.13.1**  To the fullest extent permitted by law, [Narum] shall indemnify and hold harmless [UAP] . . . from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, fees related thereto or to the enforcement of this paragraph, arising out of or resulting from performance of the Work . . . **but only to the extent caused by the negligent acts or omissions of [Narum]**,

a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, **regardless of whether or not such claim, damage, loss or expense is caused in part by [UAP]**. . . .

**§ 8.13.2**  In claims against [UAP] by an employee of [Narum] . . . the indemnification obligation under Section 8.13.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by [Narum] under workers' compensation acts, disability benefit acts or other employee benefit acts.

ECF No. 34-2 at 8 (emphasis added).

This language illustrates that the parties intended for Narum to indemnify UAP against claims asserted by an injured Narum employee for which Narum was at least partially at fault.  When read together, Sections 8.13.1 and 8.13.2 further illustrate that the parties intended to circumvent the immunity afforded to Narum by the Industrial Insurance Act.[2]  This intent to circumvent the Industrial Insurance Act, in turn, reflects a mutual understanding that an injured employee would be barred from suing Narum.  Thus, the "purpose of the overall undertaking" was for Narum to indemnify UAP, to the extent of Narum's proportionate responsibility, in the event an injured Narum employee brought suit against UAP.

Narum's argument that it only agreed to indemnify UAP against suits in which it is *alleged* to have been partially at fault is inconsistent with this purpose. As noted above, the parties clearly understood that an injured worker in Hymas's

---

[2] This was the subject of a prior summary judgment ruling.  *See* ECF No. 51.

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 9

position would be barred from asserting claims against Narum under the Industrial Insurance Act.  By logical extension, it stands to reason that the parties did not intend for Narum's indemnification obligation to be contingent upon the injured worker alleging that Narum was partially at fault.  Indeed, given that Narum could not have been named as a defendant, it seems logical to assume that the parties anticipated that an injured worker would not make any allegations whatsoever against Narum.  Thus, limiting Narum's duty to indemnify to the unusual case in which Narum *is* alleged to have been partially at fault would be an unnatural application of an otherwise straightforward undertaking.

For similar reasons, it seems implausible that the parties intended to excuse Narum from indemnifying against claims which purport to target UAP exclusively, but which raise obvious questions about whether Narum was simultaneously (or exclusively) at fault.  Adopting this interpretation of the agreement would deprive UAP of a significant benefit of its bargain: having Narum pay defense costs, in proportion to its share of liability, in cases in which Narum is ultimately found to be at least partially at fault.  The far more logical interpretation, and the one that is most consistent with the purpose of the overall undertaking, *see Newport Yacht Basin Ass'n*, 168 Wash. App. at 100, is that Narum must indemnify UAP for costs incurred in defending against any claim for which UAP might reduce (or eliminate) its own liability by establishing that Narum was simultaneously (or

1  exclusively) at fault, regardless of the allegations in the complaint or the plaintiff's

2  theory of liability.  *See Cook v. Nebraska Pub. Power Dist.*, 171 F.3d 626, 635 (8th

3  Cir. 1999) ("[B]asing the application of such an indemnification provision on the

4  actual facts of the case, and not merely on the language of the complaint, is the

5  preferred interpretation where no contrary intent appears."); *Pike Creek*

6  *Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 421 (Del. 1994) ("The

7  *indemnitee's actual wrongdoing* or lack thereof, not a third-party plaintiff's

8  allegations, should be determinative.  Where the indemnitee is free from actual

9  wrongdoing, it should not be divested of its legal right to indemnification due to

10 the unsubstantiated pleading choices of a third party.") (emphasis added); *Reliance*

11 *Ins. Co. of Illinois, Inc. v. Richfield Hospitality Servs., Inc.*, 92 F. Supp. 2d 1329,

12 1337 (N.D. Ga. 2000) ("The more accepted view of indemnification for

13 negligence, however, is that the Court should look to the actual facts rather than

14 just the allegations made in determining whether the indemnitee was negligent and

15 therefore barred from receiving indemnification.").  Hymas's premises liability

16 claim easily satisfies that requirement, as both the Benton County Superior Court

17 and the Washington Court of Appeals definitively concluded that Narum, rather

18 than UAP, was negligent.

19    Narum argues that this interpretation of the contract is untenable because

20 Washington law requires a "clear and unequivocal" expression of intent for an

indemnitor (Narum) to indemnify an indemnitee (UAP) for the indemnitee's "sole negligence." ECF No. 80 at 6-8 (citing, *inter alia*, *Nw. Airlines v. Hughes Air Corp.*, 104 Wash.2d 152 154-55 (1985), and *Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wash.2d 829, 836-37 (2012)). While that appears to be an accurate statement of law, it has no application here. The Hymas litigation did not terminate in a finding that UAP was "solely" negligent. To the contrary, the Court of Appeals concluded that Narum was not negligent *at all*. *Hymas*, 167 Wash. App. at 150-65. Accordingly, whether Narum "clearly and unequivocally" agreed to indemnify UAP for UAP's sole negligence is a non-issue. Narum's motion to exclude fees and costs incurred by UAP defending against Hymas's premises liability claim is denied.

**B. There are no Triable Issues Regarding Contributory Negligence**

1. Negligence by UAP

Narum argues that a jury must decide whether UAP was partially at fault for Hymas's accident. The Court previously addressed this issue in its order granting UAP's motion for partial summary judgment. First, the Court ruled that Narum had effectively conceded that it was solely at fault by failing to respond to UAP's argument on that point. ECF No. 51 at 14. Second, and in the alternative, the Court ruled that there were no genuine issues of material fact concerning Narum's negligence; on the undisputed factual record, a rational jury could only conclude

1    that Narum, rather than UAP, was at fault.  ECF No. 51 at 15.  In view of this

2    alternative ruling, the Court declined to address whether Narum was bound by the

3    Court of Appeals' ruling in *Hymas*—*i.e.*, that UAP was not negligent as a matter of

4    law—under the "vouching in" doctrine.  ECF No. 51 at 17.

5        The Court's earlier ruling on this issue stands.  In the interest of eliminating

6    any remaining confusion, the Court will now address the vouching in argument.  In

7    simple terms, "vouching in" is a common law device that results in a party who

8    wrongfully refuses to accept a defendant's tender of defense being bound by the

9    factual determinations made in the ensuing litigation.  To achieve this result, the

10   defendant must notify the party it seeks to vouch in (the "vouchee")

> (1) of the pendency of the suit against him, (2) that if liability is found, the defendant will look to the vouchee for indemnity, (3) that the notice constitutes a formal tender of the right to defend the action, and (4) that if the vouchee refuses to defend, it will be bound in a subsequent litigation between them to the factual determination necessary to the original judgment.

15   *Mastro v. Kumakichi*, 90 Wash. App. 157, 164-65 (1998) (citation omitted).  These

16   factors are not rigorously applied; so long as the vouchee receives adequate notice

17   of the proceedings, the fact that it is being asked to defend, and the consequences

18   of refusing to do so, the vouchee will be bound.  *Id.* at 166.

19       Narum contends that it was not properly vouched in because UAP "did not

20   inform [it] of a present duty to defend, or that it could be 'bound' by a decision in

1   the lawsuit if it declined the tender." ECF No. 80 at 12. This argument is belied

2   by the record. UAP advised Narum that it was contemplating a tender of its

3   defense shortly after being served with Hymas's complaint. ECF No. 34-3. Two

4   weeks later, Narum responded with a categorical refusal to indemnify:

> Based upon [our] review, **we do not believe that Narum Concrete Construction owes any indemnification to UAP**.
>
>        *   *   *
>
> The contract between UAP and Narum provides for indemnification [in] § 8.13. However, as stated therein, the obligation of Narum to indemnify UAP applies "only to the extent caused by the negligent acts or omissions of the contractor." Narum was not negligent. Narum has no contractual obligation to indemnify UAP for negligent acts or omissions of UAP. Therefore, **there are no facts to support the indemnification claim made by UAP**.
>
>        *   *   *
>
> We do not believe that Narum was in any way responsible (i.e., negligent) for the subject accident. Even if such were found, the Industrial Insurance Act immunizes Narum from such liability. As for the indemnification claim being made by UAP, it is also barred by the Industrial Insurance Act, which bar has not been clearly and specifically waived in the contract. For these reasons, **we do not believe that Narum has a duty to defend UAP from claims based upon UAP's negligence.**

17   ECF No. 34-4 (emphasis added). This response illustrates that Narum fully

18   understood the legal landscape and made a calculated decision to reject any future

19   tender by UAP. Because Narum made an informed, strategic decision not to

20   participate in the underlying litigation, it is bound by the Court of Appeals' ruling

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

that UAP was not negligent.  *See Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 651 (7th Cir. 1990) ("Ticor made it crystal clear to all who tendered or inquired that it would not defend.  A more formal request would have been a futile gesture.").

## 2. Contributory Negligence by Hymas

Narum also contends that its indemnification liability should be reduced in proportion to any contributory negligence that could be attributed to Hymas.  ECF No. 80 at 9-10.  Though somewhat unclear, the thrust of this argument appears to be that Narum did not agree to indemnify UAP for contributory negligence attributable to one of its own employees in a lawsuit filed by that injured employee. As noted above, the Court must apply the contract language in a manner consistent with the parties' intent and the purpose of the overall undertaking.  *Scott Galvanizing*, 120 Wash.2d at 580; *Newport Yacht Basin Ass'n*, 168 Wash. App. at 100.  The indemnification provision clearly states that Narum must indemnify UAP "to the extent [the plaintiff's injury was] caused by the negligent acts or omissions of the Contractor [Narum], a Subcontractor, *anyone directly or indirectly employed by them* or anyone for whose acts they may be liable."  ECF No. 34-2 at 8 (emphasis added).  Since Hymas was one of Narum's employees, any contributory negligence attributable to him is expressly within the scope of Narum's indemnification obligation.

*Wicklund v. Gus J. Bouten Construction Co.*, 36 Wash. App. 71 (1983), the only case upon which Narum relies, is easily distinguished.  In that case, a contractor (Bouten) was found 75% liable for injuries sustained by an employee of a subcontractor (Northwest) in an underlying personal injury action.  The injured employee was found 25% contributorily negligent; the employer, Northwest, was found not negligent.  Bouten sued Northwest to recover half the damages awarded to the injured employee pursuant to an indemnification agreement which required the parties to share equally in any liability arising from "joint or concurring negligence." *Wicklund*, 36 Wash. App. at 73.  Although Northwest had been found not negligent, Bouten argued that the employee's negligence should be attributed to Northwest, which would render the parties "jointly and concurrently" negligent and trigger Northwest's obligation to share equally in the damages.  The Court of Appeals rejected this argument, reasoning that "[a]n employer cannot be held to contribution when it has not acted negligently." *Id.* at 74.

In this case, by contrast, the employer (Narum) *has* acted negligently.  And, what's more, the party seeking indemnification (UAP) has *not* acted negligently. In other words, this case presents the converse of the situation at issue in *Wicklund*. Unlike Northwest, Narum is not an innocent indemnitor.  Accordingly, there is no bar to attributing Hymas's contributory negligence to Narum.

1    In the final analysis, Narum agreed to indemnify UAP against claims arising

2    from the negligent acts of Narum and its employees—including claims filed by an

3    injured Narum employee.  The parties' contract did not carve out an exception to

4    Narum's indemnity obligation for costs attributable to an injured Narum

5    employee's contributory negligence.  Thus, under the plain language of the

6    indemnification provision, Narum must also bear the cost of its own employee's

7    contributory negligence.

8    **C. A Jury Must Decide the Amount of Damages to Which UAP is**

9    **Entitled**

10    UAP seeks a ruling that the $397,549 in attorney's fees and $44,793 in costs

11    it incurred in defending against Hymas's claims is reasonable as a matter of law.

12    ECF No. 61 at 13-20.  Because UAP's entitlement to fees and costs arises under

13    Washington law, the Court must use the "lodestar" method to evaluate whether the

14    requested award is reasonable.  This method involves multiplying "the hours

15    reasonably expended in the litigation by each lawyer's reasonable hourly rate of

16    compensation." *Steele v. Lundgren*, 96 Wash. App. 773, 780 (1999).  A reasonable

17    hourly rate should account for factors such as the attorney's customary hourly

18    billing rate, the level of skill required by the litigation, the time limitations imposed

19    on the litigation, the amount of potential recovery, the attorney's reputation, and

20    the undesirability of the case. *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d

581, 597 (1983).  The resulting "lodestar" figure constitutes a "presumptively reasonable fee."  224 *Westlake, LLC v. Engstrom Prop., LLC*, 169 Wash. App. 700, 738 (2012).

"Attorney fees recoverable pursuant to a contractual indemnity provision are an element of damages, rather than costs of suit."  *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wash. App. 743, 760 (2007).  Accordingly, the amount of fees a plaintiff is entitled to recover pursuant to an indemnity provision is generally a question of fact to be resolved by the jury.  *See id.* ("[T]he measure of the recovery of attorney fees pursuant to the indemnification provision must be determined by the trier of fact.  When trial is to a jury, therefore, the measure of such damages is a jury question."); *Newport Yacht Basin Ass'n*, 168 Wash. App. at 102 ("[A]ttorney fees sought pursuant to a contractual indemnity provision are an element of damages that must be proved to the trier of fact.").  The plaintiff bears the burden of establishing that the amount claimed is reasonable.  *Id.* at 761.  "[F]actors bearing upon the reasonableness of attorney fees awardable as costs also bear upon the reasonableness of attorney fees recoverable as damages."  *Id.* at 762.

The only contested element of the reasonableness calculus is the number of hours billed by UAP's attorneys in the underlying litigation.  UAP argues that the hours billed were reasonable in light of the complexity of the case and the amount of damages potentially at stake ($2 to 2.5 million).  UAP further notes that these

1    hours were actually billed and paid, which UAP urges the Court to consider as a

2    strong indicator of reasonableness.   Narum, on the other hand, argues that the

3    number of hours expended was unreasonable because UAP could have extricated

4    itself from the litigation earlier by filing a motion for summary judgment prior to

5    engaging in discovery.   In its view, UAP's liability defense was "straightforward

6    and obvious, and the necessary factual record to prepare for summary judgment

7    was apparent and could have been accomplished [more] promptly."   ECF No. 80 at

8    17.   Because these arguments rely heavily on the opinions of the parties' respective

9    experts, the Court will address the admissibility of the experts' opinions before

10   proceeding any further.

11            The admissibility of expert witness testimony is governed by Federal Rule of

12   Evidence 702.   The rule provides:

13            A witness who is qualified as an expert by knowledge, skill,
          experience, training, or education may testify in the form of an
14        opinion or otherwise if: (a) the expert's scientific, technical, or other
          specialized knowledge will help the trier of fact to understand the
15        evidence or to determine a fact in issue; (b) the testimony is based on
          sufficient facts or data; (c) the testimony is the product of reliable
16        principles and methods; and (d) the expert has reliably applied the
          principles and methods to the facts of the case.

17

18   Fed. R. Evid. 702.

19            In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court directed trial

20   courts to perform a "gatekeeping" function to ensure that expert testimony

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 19

conforms to Rule 702's relevance and reliability requirements.  509 U.S. 579, 597 (1993).  *Daubert* identifies four non-exclusive factors a court may consider in assessing the relevance and reliability of expert testimony: (1) whether a theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential error rate and the existence and maintenance of standards controlling the theory or technique's operation; and (4) the extent to which a known technique or theory has gained general acceptance within a relevant scientific community.  *Id.* at 593-94.  These factors are not to be applied as a "definitive checklist or test," but rather as guideposts which "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  The ultimate objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.

## 1. Stephen Todd (Narum's Attorney's Fees Expert)

Narum's expert, Stephen Todd, is prepared to opine that (1) UAP could have avoided substantial defense costs by moving for summary judgment prior to embarking on discovery; and (2) UAP is not entitled to recover defense costs

1    associated with Hymas's premises liability claim because the claim was asserted

2    solely against UAP.  ECF No. 66-1 at 3-8.  UAP challenges the admissibility of the

3    first opinion on the ground that it is unreliable and unduly speculative, and seeks to

4    exclude the second opinion on the ground that it constitutes an impermissible legal

5    conclusion.  ECF No. 65 at 2.

6        Mr. Todd's first opinion is admissible.  While it is true that this opinion

7    relies on "speculation" that an earlier motion for summary judgment would have

8    been granted, that is all anyone in Mr. Todd's position can offer.  No expert (or

9    trier of fact, for that matter) can say for sure whether the state trial court would

10   have granted a motion for summary judgment filed prior to discovery.  An expert

11   with Mr. Todd's qualifications can, however, offer an opinion about the *likelihood*

12   that such a motion would have been granted based upon the facts and legal theories

13   involved.  In Mr. Todd's opinion, the likelihood that an earlier summary judgment

14   motion would have been granted is high.  This opinion is neither unreliable nor

15   unduly speculative.  It is a proper subject of expert testimony.  *Jacob's Meadow*,

16   139 Wash. App. at 761.

17       Mr. Todd's second opinion, on the other hand, is inadmissible.  Whether

18   UAP is entitled to recover litigation costs relating to Hymas's premises liability

19   claim is a pure question of law.  As such, this issue is not a proper subject of expert

20   testimony.  *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443,

447 (9th Cir. 1992) (expert opinion on pure issue of law inadmissible under Rule 702). UAP's motion to strike this portion of Mr. Todd's testimony is granted.

## 2. Anthony Shapiro (UAP's Attorney's Fees Expert)

UAP's expert, Anthony Shapiro, stands prepared to opine that the hours billed by UAP's attorneys are reasonable in view of the complexity of the case, the amount of damages potentially at stake, the fact that UAP actually paid for the work, the quality of opposing counsel's representation, and the results obtained. ECF No. 73, Ex. 5. Narum moves to exclude Mr. Shapiro's anticipated testimony on the ground that he lacks sufficient expertise and that his opinions are unreliable. ECF No. 72 at 5-10.

Narum's challenges are not well-taken. Mr. Shapiro is an attorney who has been practicing law since 1982. He is a named partner in a respected litigation firm and leads the firm's personal injury group. He has handled "hundreds" of personal injury cases. He has been named a "Super Lawyer" and has been given an "AV" rating by Martindale-Hubbell. He also teaches trial practice at the University of Washington School of Law and frequently teaches at the National Institute of Trial Advocacy. ECF No. 73, Ex. 5. Mr. Shapiro is eminently well-qualified to offer an opinion as to the reasonableness of UAP's attorney's fees.

Further, contrary to Narum's assertions, Mr. Shapiro's reliance upon the lodestar method to assess the reasonableness of UAP's litigation costs is proper.

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 22

1  *Jacob's Meadow*, 139 Wash. App. at 762 ("[F]actors bearing upon the
2  reasonableness of attorney fees awardable as costs also bear upon the
3  reasonableness of attorney fees recoverable as damages."). Narum's motion to
4  exclude Mr. Shapiro's testimony is therefore denied.

5       Having thoroughly reviewed the record, the Court concludes that a jury must
6  decide whether the amount of attorney's fees and costs incurred by UAP in the
7  underlying litigation is reasonable. Although the Court would likely approve the
8  request as reasonable if the fees were being awarded as costs, the fees sought here
9  are an element of UAP's damages. *Jacob's Meadow*, 139 Wash. App. at 760. As
10 such, a jury must decide whether the amount claimed by UAP is reasonable; the
11 Court cannot substitute its judgment for that of the jury given that the parties have
12 come forward with conflicting expert testimony on the issue of reasonableness.
13 *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir.
14 2000) ("Weighing the credibility of conflicting expert witness testimony is the
15 province of the jury."). Accordingly, UAP's motion for partial summary judgment
16 on the issue of damages is denied.

17 ///
18 ///
19 ///
20 ///

ORDER ON SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 23

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment re: Damages (ECF No. 61) is **DENIED**.

2. Defendant's Motion for Partial Summary Judgment re: Premises Liability (ECF No. 69) is **DENIED**.

3. Plaintiff's Motion to Exclude the Testimony of Stephen M. Todd (ECF No. 65) is **GRANTED in part** and **DENIED in part**.  Mr. Todd's opinion that UAP may not recover litigation costs relating to Hymas's premises liability claim are hereby **STRICKEN**.  No testimony on this subject may be offered to the jury.

4. Defendant's Motion to Exclude the Testimony of Anthony Shapiro (ECF No. 72) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 18, 2014.



THOMAS O. RICE
United States District Judge